UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CIVIL ACTION NO. _____
*Electronically Filed*

**MADELINE KEELING**                                                                                          **PLAINTIFF**

v.

**BRANNON CROSSING FAMILY DENTAL, PLLC**                                          **DEFENDANT**

*Serve via Certified Mail:*
Akira Nakada
231 East Brannon Road
Nicholasville, Kentucky 40356

---

**COMPLAINT WITH JURY DEMAND**

---

Plaintiff Madeline Keeling, by and through counsel, submits this Complaint against Defendant Brannon Crossing Family Dental, PLLC.

### Introduction

1. Keeling brings this action against Brannon Crossing Family Dental, PLLC, her former employer, to redress violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kentucky Wages and Hours Act, KRS Chapter 337. Brannon Crossing's violation of both statutes has deprived Keeling of wages to which she was entitled by law.

2. Brannon Crossing paid Keeling on a commission basis, subject to a guaranteed day-rate wage for each day worked. Pursuant to a common plan and practice, Brannon Crossing did not pay Keeling overtime wages for all hours worked in excess of 40 in a work week.

3. Further, Brannon Crossing failed to pay the agreed upon wage to Keeling by (a) paying the commission rate even when the day-rate was more than commissions; and (2) failing to pay the day-rate for partial days worked.

4. This action is brought to recover unpaid wages, including overtime wages, that Brannon Crossing owes to Keeling.

## Parties, Jurisdiction, and Venue

5. Keeling is, and at all times relevant to this action was, a citizen and resident of Lexington, Fayette County, Kentucky.

6. Brannon Crossing is, and at all times relevant to this action was, a Kentucky limited liability company licensed to conduct business in the Commonwealth of Kentucky, and which conducted business in Nicholasville, Jessamine County, Kentucky. Brannon Crossing may be served with process via its registered agent, Akira Nakada, at 231 East Brannon Road, Nicholasville, Kentucky 40356.

7. Keeling's claims for unpaid wages are brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kentucky Wages and Hours Act, KRS §§ 337.285 and 337.385. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367.

8. The United States District Court for the Eastern District of Kentucky, Central Division at Lexington, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(a)(2)(B).

## Facts

9. Brannon Crossing operates a full-service dental office, offering dental and orthodontic services to both children and adults in Nicholasville, Kentucky.

10. At all times relevant to this action, Brannon Crossing was an enterprise engaged in interstate commerce as defined by the Fair Labor Standards Act, 29 U.S.C. § 203(s)(1), with annual revenue in excess of $500,000.00.

11. Brannon Crossing established and administered the regular rates of pay and overtime pay rates, job duties, performance expectations, and work assignments and locations for all employees, including Keeling.

12. Brannon Crossing hired Keeling in September 2016 as a dental hygienist, agreeing to pay her $30.00 per hour. On October 1, 2017, Brannon Crossing began paying Keeling on a commission basis, subject to a guaranteed day-rate wage for each day worked. Keeling received either a 30% commission of her gross hygiene production minus insurance adjustments, or a modified day-rate of $240.00, whichever was higher over the course of the pay period. For days that Keeling worked less than a full day, Brannon Crossing would only credit her a fraction of a day, and therefore not truly paying her a day-rate.

13. In February 2019, Brannon Crossing increased Keeling's pay to a commission of 33% of her gross hygiene production minus insurance adjustments, or a modified $260.00 day-rate, whichever was higher over the course of the pay period.

14. Brannon Crossing inconsistently applied the modified day-rate to Keeling's pay. For example, on March 17, 2019, Keeling's timecards show she worked 2.75 hours, which Brannon Crossing considered a full day. On November 30, 2019, however, Brannon Crossing considered 2.75 hours only a half-day. On December 5, 2018, Keeling's timecard shows she worked 2.5 hours, but Brannon Crossing paid her $75.00—the equivalent of using an hourly rate calculated by dividing her day rate ($240) by 8 hours.

15. Over the course of Keeling's employment, Brannon Crossing considered full days as anywhere from 7.75 hours worked (*e.g.*, November 20, 2017) to 2.75 hours worked (*e.g.*, March 17, 2019); half days as anywhere from 6.25 hours worked (*e.g.*, July 24, 2019) to 1 hour worked (*e.g.*, March 20, 2019); and quarter days as anywhere from 2.75 hours worked (*e.g.*, March 14,

2018) to 1.25 hours worked (*e.g.*, March 7, 2018). For hours worked pursuing continuing education credits, Brannon Crossing sometimes used an hourly rate (*e.g.*, October 19, 2019, and December 5, 2018), but sometimes merely included the time in the day-rate (*e.g.*, November 13, 2018). And on occasions when she worked less than an hour and then used sick time (*e.g.*, October 19, 2018) or vacation time (*e.g.*, October 21, 2019), Brannon Crossing did not credit Keeling with any fraction of a day, but simply did not pay her for those hours worked.

16. Starting January 1, 2020, Brannon Crossing stopped offering commission-based pay and reduced Keeling's hourly rate to $30.00. On January 20, 2020, Brannon Crossing changed Keeling's status to part-time and no longer offered her any benefits. Because of these changes, Keeling voluntarily resigned her employment on January 21, 2020.

17. Beginning in October 2017, when Brannon Crossing began paying her on a commission/day-rate basis, Keeling regularly worked more than 40 hours per week. Brannon Crossing, however, did not pay Keeling time-and-a-half for any of her overtime hours—either under the calculations outlined in 29 CFR § 778.118 for employees paid commission on a workweek basis, or under 29 CFR § 778.112 for day-rate employees; rather, Brannon Crossing only paid Keeling a straight commission or a day-rate for days worked, regardless of whether she worked in excess of 40 hours in a week.

18. Brannon Crossing was well aware of the fact that Keeling worked in excess of 40 hours a week, as it kept records of each employee's hours worked each day.

19. During several pay periods, Brannon Crossing improperly included days paid using vacation, holiday, or sick time in determining whether to pay Keeling by commission or by the day rate. For example, for the November 11-24, 2018, pay period, Keeling worked 8 full days, which, under the agreed-upon wage, was calculated at $1,920.00 ($240.00 x 8 days). Her

commissions for that pay period totaled $1,934.00. But instead of paying Keeling the higher commission amount and adding on the two paid holidays, Brannon Crossing included the two paid holidays as actual days worked and paid Keeling by the lower day-rate amount.

20. Keeling has been deprived of full and proper payment of overtime wages because Brannon Crossing failed to pay her time-and-a-half for all overtime hours worked from October 2017 through December 2019.

21. Keeling has been deprived of the full and proper payment of agreed-upon wages because Brannon Crossing manipulated its calculations of actual days worked to include vacation, holiday, or sick time to avoid paying Keeling her earned commissions, when those commissions amounted to more than the day rate.

22. Keeling has been deprived of the full and proper payment of agreed-upon wages because Brannon Crossing did not pay her the agreed-upon day-rate on days she spent time working.

### Count I:
### Violation of the Fair Labor Standards Act, 29 U.S.C. § 207

23. 29 U.S.C. § 207 provides that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

24. Keeling was an "employee" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

25. Brannon Crossing was an "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

26. During her employment, Keeling worked more than forty hours in a week and was not paid time-and-a-half for all such work.

27. By failing to pay Keeling appropriate wages for all time spent working, including overtimes wages, Brannon Crossing has willfully, knowingly, intentionally, or recklessly violated the FLSA.

28. As a result of Brannon Crossing's violations and unlawful acts, Keeling has suffered damages, including, but not limited to, unpaid overtime wages in an amount to be determined at trial. Keeling is also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

**Count II:**
**Violation of the Kentucky Wages and Hours Act, KRS § 337.285**

29. KRS § 337.285 provides that "[n]o employer shall employer any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forth (40) hours in a work week at a rate of not less than one and one half (1-1/2) times the hourly wage rate at which he is employed."

30. Keeling may sue for violation of KRS § 337.285 through KRS § 337.385.

31. Keeling was an "employee" as defined by the Wages and Hours Act. KRS § 337.010(1)(e).

32. Brannon Crossing was an "employer" as defined by the Wages and Hours Act. KRS § 337.010(1)(d).

33. During her employment, Keeling worked more than forty hours in a week and was not paid time-and-a-half for all such work.

34. By failing to pay Keeling appropriate overtime wages for all hours worked in excess of 40 in a work week, Brannon Crossing has willfully, knowingly, intentionally, or recklessly violated the Wages and Hours Act.

35. Brannon Crossing's failure to pay Keeling overtime wages was not in good faith, and had no reasonable grounds for believing that its actions did not violate state law.

36. As a result of Brannon Crossing's violations and unlawful acts, Keeling has suffered damages, including, but not limited to, unpaid overtime wages in an amount to be determined at trial. Keeling is also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

### Count III: Violation of the Kentucky Wages and Hours Act, KRS § 337.060

37. KRS § 337.060 provides that "no employer shall withhold from any employee any part of the wage agreed upon."

38. Keeling may sue for violations of KRS § 337.060 through KRS § 337.385.

39. Keeling was an "employee" as defined by the Wages and Hours Act. KRS § 337.010(1)(e).

40. Brannon Crossing was an "employer" as defined by the Wages and Hours Act. KRS § 337.010(1)(d).

41. During her employment, Keeling regularly worked days that were not compensated at the agreed-upon day rate or commission rate.

42. Brannon Crossing, pursuant to a common policy, custom, plan, or practice, regularly included vacation, holiday, or sick days to the number of days actually worked by its employees so that day-rate wages appeared larger than employees' earned commissions.

43. By failing to pay Keeling a true day rate for partial days worked, either by not paying her at all for time worked, or by only paying her one-quarter or one-half of the day rate, Brannon Crossing has withheld the agreed-upon wages owed to Keeling.

44. Brannon Crossing's failure to pay Keeling the agreed-upon wages was not in good faith, and it had no reasonable grounds for believing that its actions did not violate Kentucky law.

45. As a result of Brannon Crossing's violations and unlawful acts, Keeling has suffered damages, including, but not limited to, unpaid wages in an amount to be determined at trial. Keeling is also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff Madeline Keeling respectfully demand as follows:

A. for a trial by jury;

B. for judgment against Defendant Brannon Crossing Family Dental, PLLC, on all claims asserted in this Complaint;

C. for an award of compensatory damages and equitable relief, including, but not limited to, back pay and liquidated damages;

D. for appropriate injunctive relief to ensure that Brannon Crossing's unlawful pay practices cease immediately;

E for reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

F. for pre- and post-judgment interest; and

G. any other relief to which she may be entitled.

- 9 -

Respectfully submitted,

**/s/ Matthew T. Lockaby**
Matthew T. Lockaby
Tamara J. Patterson
Lockaby PLLC
1795 Alysheba Way, Suite 4207
Lexington, Kentucky 40509
Tele:   859.263.7884
Fax:    844.270.3044
Email: mlockaby@lockabylaw.com
          tpatterson@lockabylaw.com

*Counsel for Plaintiff, Madeline Keeling*